IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| LLOYD C. PEEPLES, III,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLINA CONTAINER, LLC, and<br>WILLIAM PONDER,<br><br>      Defendants. | Civil Action No. 4:19-cv-21-MLB |

## <u>PLAINTIFF'S PETITION FOR AN AWARD OF ALL LOSSES</u>

Comes now Plaintiff Lloyd Peeples, III ("Plaintiff"), and petitions the Court for an award of all "Losses" that he is entitled to under the Asset Purchase Agreement ("APA") in accordance with the Court's September 16, 2021 Order. In support of his Petition, Plaintiff shows the Court as follows:

### INTRODUCTION

The whole point of the APA's broad indemnification provision and its equally broad definition of Losses is to ensure that the indemnified party is made whole. Plaintiff incurred Losses because Carolina Container failed to pay the Holdback Amount. Carolina Container could have prevented Losses in addition to the Holdback Amount—i.e., attorneys' fees, interest, and costs—by engaging in meaningful settlement discussions following the

1

diversion. But it chose a different strategy: feign any responsibility and blame everyone else. Based on Carolina Container's position, it was reasonable for Plaintiff to incur the costs, fees, and expenses associated with recovering the Holdback Amount. Plaintiff, therefore, asks the Court to award him $2,526,717.63 in Losses, which excludes the fees and expenses specifically related to Plaintiff's claims against Ponder.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2018, Defendant Ponder provided wiring instructions to Carolina Container for an account in Plaintiff's name for purposes of receiving the Holdback Amount. These instructions were not followed. Instead, on July 3, 2018, Carolina Container sent the $1,710,000 to an account in the name of JAE Holdings Ltd. at a bank in Hong Kong. The parties discovered the mishap on July 18, 2018. In response, Plaintiff quickly retained new counsel, who demanded that Carolina Container pay the Holdback Amount. (I.S. Duggan Aff. at ¶¶ 10-13 (attached as Ex. 1).) Carolina Container (and its affiliated entities) forcefully refused. (*Id*. at ¶¶ 14-18.)

Plaintiff's counsel then began its pre-suit investigation, which included, among other things, reviewing the various emails and piecing together what happened; speaking with various potential experts, including those with wire

2

transfer expertise; researching potential claims against all actors, including those entities that are affiliated with Carolina Container, but did not sign the APA; and, ultimately, preparing Plaintiff's complaint. (*Id.* at ¶¶ 19-29.)

Plaintiff filed his complaint in February 2019, and it was met with a barrage of motions by counsel for Carolina Container and its affiliates. Personal jurisdiction was challenged; the viability of claims was attacked; it was a full-on assault. While counsel for Carolina Container and its affiliates were partially successful in narrowing the claims and parties, Plaintiff's pursuit was not without basis, as noted by the Court. (*Id.* at ¶ 28.)

As discovery began, Carolina Container's aggressiveness did not stop. (*Id.* at ¶¶ 30-45.) It challenged the completeness of initial disclosures; it sought broad written discovery and document productions; and it opposed basic—and relevant—discovery to JP Morgan Chase Bank (the bank used for the diverted wire). (*Id.* at ¶¶ 31-35.)

Then, at summary judgment, Carolina Container pursued highly textual arguments that the Court firmly rejected. Suffice to say, Carolina Container aggressively opposed Plaintiff's efforts to recover the Holdback Amount and contributed significantly to the Losses in addition to the Holdback Amount. (*See id.* at ¶¶ 13-48.)

On September 16, 2021, the Court granted Plaintiff's motion for

summary judgment and denied the Defendants' cross motions for summary judgment. (*See* Sept. 16, 2021 Order [Doc. 186].) In doing so, it found that Defendant Carolina Container LLC failed to satisfy its obligation to pay Plaintiff the Holdback Amount under APA. (*See id*.) And based on that breach, the Court found that Carolina Container is required to "pay and reimburse" Plaintiff for all of his associated "Losses" under the indemnification provision, which "includes $1.71 million, interest, and reasonable attorneys' fees." (*Id*. at 27; *see also id*. at 13.)

As directed by the Court, Plaintiff's counsel met and conferred with Carolina Container's counsel in an attempt to resolve or narrow what constitutes Plaintiff's Losses. Such efforts were unsuccessful. The parties fundamentally disagree about the scope of the indemnification obligation and the definition of "Losses." Unsurprisingly, Carolina Container takes a narrow view, while Plaintiff believes that the indemnification provision exists to make Plaintiff whole.[1]

As set forth in more detail below, Plaintiff requests $2,526,717.63 in

---

[1] Carolina Container offered to stipulate to $125,000 in reasonable attorneys' fees and $100,000 in interest, when Plaintiff had, in fact, incurred nearly $400,000 in attorneys' fees and accrued approximately $400,000 in interest. Carolina Container refused to stipulate to any amount for costs and expenses, when Plaintiff has incurred in excess of $100,000 in expenses.

Losses, which is broken down as follows:

| Description | Amount |
|---|---|
| Holdback Amount | $1,710,000.00 |
| Interest | $399,437.26 |
| Attorneys' fees | $316,164.69 |
| Expert Fees & Costs | $57,188.40 |
| Additional Costs and Expenses | $43,927.28 |
| **TOTAL** | **$2,526,717.63** |

**ARGUMENT AND CITATION OF AUTHORITY**

**A.    Carolina Container broadly agreed to indemnify Peeples for almost any expense, cost, or fee that arises out of its failure to pay the Holdback Amount.[2]**

"Delaware adheres to the objective theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citation omitted)). When a contract's language is clear and unambiguous, courts applying Delaware law will give effect to the plain meaning of the contract's terms and provisions. *Id.* at 1159-60. The contract is to be read as a whole, giving effect to each term and provision, so as not to render any part of the contract mere surplusage. *Id.* at 1159.

Here, two sections of the APA largely control the issue at hand:  (1)

---

[2] The parties selected Delaware law to govern the APA. (*See* APA § 10.10.)

5

Section 8.03, which contains Carolina Container's indemnification obligation;

and (2) Article 1, which contains the definition of "Losses." Reading these two

sections together, Carolina Container must pay and reimburse Plaintiff for

almost any fee or cost spent in order to "enforce [his] right to

indemnification." (*See* Sept. 16, 2021 Order at 13.)

> Under Section 8.03, Carolina Container agreed to:

> indemnify and defend [Peeples] ... against, and shall hold [him]
> harmless from and against, and shall pay and reimburse [him]
> for, any and all Losses incurred or sustained by, or imposed upon,
> [him] based upon, arising out of, with respect to or by reason of:
> ... (b) any ... breach or non-fulfillment of any covenant, agreement
> or obligation to be performed by [Carolina Container] pursuant to
> this Agreement ...

(APA § 8.03.) This provision is expansive, using such phrases as "any and all

Losses", "incurred or sustained by, or imposed upon", and "based upon,

arising out of, with respect to or by reason of." (*Id*.)

> Article 1 adopts an equally broad definition of "Losses":

> "**Losses**" means losses, damages, liabilities, deficiencies, Actions,
> judgments, interest, awards, penalties, fines, costs, or expenses of
> whatever kind, including reasonable attorneys' fees and the cost
> of enforcing any right to indemnification hereunder and the cost
> of pursuing any insurance providers; provided, however, that
> "Losses" shall not include punitive damages, except in the case of
> fraud or to the extent actually awarded to a Governmental
> Authority or other third party.

(APA at Art. 1.)[3] If the lengthy litany of loss examples were not enough, the definition included the catch-all phrase "or expenses of whatever kind." Respectfully, it is difficult to draft a more inclusive indemnification obligation.

## B.    Holdback Amount.

The fundamental loss and damage here is Plaintiff not receiving the Holdback Amount. Plaintiff does not believe that there is any dispute that the Holdback Amount is included in the definition of "Losses" as a loss and/or damage. While there was some dispute as to whether the Holdback Amount is $1,710,000 or $1,735,502.50 (*see* Am. Compl. [Doc. 46] at ¶ 39), Plaintiff accepts that $1,710,000 is the correct amount for the Holdback Amount.

## C.    Interest.

The definition of "Losses" expressly includes "interest." (*See* APA at Art. 1.) While "interest" is not a defined term in the APA (*see id.*), Black's Law Dictionary defines "interest" as "the compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by

---

[3] The only defined term within the definition of Losses is "Actions," which is defined as "any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, summons, subpoena, or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether in law or equity." (APA at Art. 1.)

one who is entitled to its use; esp., the amount owed to a lender in return for the use of borrowed money." (Black's Law Dictionary (8th ed.) at 829.

Interest is not a penalty, but, rather, it is "compensation to the plaintiff for the use of funds that were rightfully his." *See Insurance Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 942 (11th Cir. 1990).[4] "Georgia law allows for the recovery of prejudgment interest for breach of contract." *CSX Transp., Inc. v. General Mills, Inc.*, Civil Action File No. 1:14-CV-201-TWT, 2019 WL 2513793 at *10 (N.D. Ga. 2019). Georgia provides for prejudgment interest at the legal rate of 7% per annum "where the rate percent is not established by written contract." O.C.G.A. § 7-4-2(a)(1)(A). An award of prejudgment interest is automatic when the damages are liquidated. *See* O.C.G.A. § 7-4-15.

Here, Carolina Container was contractually required to pay Plaintiff the $1,710,000 Holdback Amount on approximately July 3, 2018. "Based upon" Carolina Container's breach of the APA, Plaintiff has lost the interest that he otherwise would have accrued on the Holdback Amount beginning as of July 3, 2018 and continuing through today. While Plaintiff only asks for Georgia's statutory rate of interest (7%), had Plaintiff received the Holdback

---

[4] "In a diversity case we follow the state law governing the award of prejudgment interest." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (citation omitted). Carolina Container's counsel agreed that Georgia law applied to the issue of interest.

8

Amount, he could have invested that significant sum and reaped the benefits of a soaring stock-market. Even assuming a somewhat conservative 10% gain in the market, Plaintiff would have earned approximately $566,010 over the past three years had he timely received the Holdback Amount.

Moreover, the Holdback Amount is liquidated because it is a defined term under the APA. Carolina Container became liable to Plaintiff for the Holdback Amount as of July 3, 2018 when it failed to pay Plaintiff to pay the $1,710,000.

As of the filing of this Petition, Plaintiff is entitled to interest on the Holdback Amount in the amount of $399,437.26. Plaintiff calculates the owed interest as follows:

| $1,710,000 | x | 7% | ÷ | 365 | x | 1218 | = | $399,437.26 |
|---|---|---|---|---|---|---|---|---|
| Principal | | Annual Interest | | Days in Year | | Days Between | | Pre-judgment interest |

In the Parties' good-faith discussions after the September 16, 2021 Order, Carolina Container took the position that Section 8.06 of the APA *precluded* any interest until after there was a final, non-appealable judgment—i.e., that the APA limits Plaintiff's remedy of interest. Respectfully, Section 8.06 does not do that. Instead, it merely identifies that interest shall accrue at 12% if Carolina Container does not pay within five

business days *after* a "final, non-appealable adjudication." (*See* APA § 8.06.)[5]

Had the parties wished to exclude pre-judgment interest, it could have

expressly done so in the APA. Or they could have chosen not to include the

word "interest" in the definition of "Losses. " But they did neither, meaning

that prejudgment interest is properly recoverable.  *See*, *e.g.*, *Interim*

*Healthcare v. Spherion Corp.*, 884 A.2d 513, 549 (Del. Super. Ct. 2005)

(explaining that Delaware law requires express language for limitations on a

remedy).

### D.    Attorneys' Fees.

The next category of "Losses" is Plaintiff's reasonable attorneys' fees

"arising out of, with respect to or by reason of" Carolina Container's breach in

not paying Plaintiff the Holdback Amount. (APA § 8.03.) In connection with

prosecuting this lawsuit through summary judgment, Plaintiff incurred

$374,409.50 in total attorneys' fees based on 1,352 total hours worked.

Plaintiff contends that $316,164.69 are his reasonable attorneys' fees

arising out of Carolina Container's failure to pay the Holdback Amount.[6] This

---

[5] The increase from the 7% statutory rate to the 12% contractual rate is
significant, thus indicating a desire to impose a higher cost on the
indemnifying party to further incentivize full and prompt indemnification.
[6] Out of an abundance of caution, Plaintiff has excluded those fees that, based
on the time entries, appear specific to the claims against Defendant Ponder,
such as responding to Ponder's discovery to Peeples. This totals $49,754.00

request is supported by the actual hours worked and the actual rate charged, the novelty of the issues involved, the rate(s) customarily charged in the Rome Division, the degree to which Carolina Container vigorously opposed liability (and continues to do so), and the location of the witnesses.

### (1)    *Delaware law on attorneys' fee requests.*

In a federal case with diversity jurisdiction, state law applies to substantive issues, including an award of attorneys' fees. *See*, *e.g.*, *GT Software, Inc. v. webMethods, Inc.*, 2008 WL 11334478, at *1-3 (N.D. Ga. Apr. 3, 2008) (analyzing and applying *Erie* concepts with choice of law provisions).

Here, assuming Delaware law applies, eight factors are used to determine the reasonableness of an attorneys' fees request. *See*, *e.g.*, *Shareholder Representative Svcs., LLC v. Shire US Holdings, Inc.*, 2021 WL 1627166, at *1 (Del. Ct. Ch. Apr. 27, 2021) ("This court applies the eight factors of Rule 1.5(a) of the Delaware Rules of Professional Conduct to evaluate whether the requested fees are reasonable in contractual fee-

---

based on 178 billed hours. (*See* I. Duggan Aff. at Ex. D ("Excluded Fees" sheet).) Plaintiff has also excluded those fees that Carolina Container previously paid ($8,490.81), which were associated with the subpoena to JP Morgan Chase Bank. (*See id*. at Ex. D ("Categories of Work" sheet); *see also* Stipulation for Plaintiff's Fees and Costs [Doc. 94]; Dec. 11, 2019 Order [Doc. 96].) When these two categories of fees are excluded from the total fees incurred, the remaining fees subject to recoupment as "Losses" are $316,164.69, based on 1,174 billed hours.

shifting cases.").[7] Those factors are:

1.   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2.   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3.   the fee customarily charged in the locality for similar legal services;

4.   the amount involved and the results obtained;

5.   the time limitations imposed by the client or by the circumstances;

6.   the nature and length of the professional relationship with the client;

7.   the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8.   whether the fee is fixed or contingent.

Rule 1.5(a) of the Del. R. Prof. C.[8]

While the Court can consider whether the number of hours devoted to the litigation was excessive or redundant, determining the reasonableness of

---

[7] Georgia law and federal law review fee petitions in a similar way:  how many hours were worked; how many hours were reasonable under the circumstances; and what is a reasonable hourly rate for attorneys of similar skill and experience. *See*, *e.g.*, *Mecca Const. Inc. v. Maestro Investments, LLC*, 320 Ga. App. 34, 44 (2013); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

[8] Factors two, five, six, and eight have limited, if any, application here.

amounts sought does not require the court to examine each time entry individually. *See Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997-98 (Del. Ch. 2012); *see also Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *8-9 (Del. Ch. Aug. 5, 2003) (rejecting alleged requirement of line-item review). Discussing specific invoices typically "would neither be useful nor practicable." *See Weichert Co. of Pa. v. Young*, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008).

Similarly, the Court is not required to "assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." *Daneberg*, 58 A.3d at 998. "For a Court to second-guess, on a hindsight basis, an attorney's judgment ... is hazardous and should whenever possible be avoided." *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998). The party seeking fees carries its burden to justify a challenged litigation decision by showing that "the services that were rendered [were] thought prudent and appropriate in the good faith professional judgment of competent counsel." *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del.Ch. Aug. 6, 1993).

(i)     **Factor One:  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.**

(a)     *The time and labor required.*

The time and labor actually expended on this case should be undisputed. As set forth in Plaintiff's counsel's affidavit and the attached exhibits, Plaintiff's counsel devoted 1,352 hours to this case through summary judgment, which cost Plaintiff $374,409.50 in attorneys' fees. (*See* I.S. Duggan Aff. ¶ 49; *id*. at Ex. A (invoices); *id*. at Ex. B (spreadsheet).) Plaintiff contends that $316,164.69 in fees, based on 1,174 hours of work, are his reasonable attorneys' fees—and thus Losses—that Carolina Container should be required to pay, broken down as follows:

| Category | Hours | Fees |
|---|---|---|
| Pre-Suit Investigation and Preparing the Complaint | 144 | $41,101.00 |
| Reviewing Answers and Motion-to-Dismiss Briefing | 111.9 | $31,597.50 |
| Rule 26(f) Conference | 12 | $3,447.50 |
| Amending Complaint | 42.2 | $12,039.50 |
| Written Discovery and Document Production | 135 | $37,519.50 |
| JP Morgan | 73.3 | $18,373.00 |
| Depositions | 291.9 | $82,337.00 |
| Experts | 147.5 | $41,553.50 |
| Summary Judgment | 216.2 | $56,697.00 |
| Prior Carolina Container Payment for JP Morgan Subpoena | | ($8,490.81) |
| TOTAL | 1,174 | $316,164.69 |

14

(*See id.* ¶¶ 50-91.) The question, if any, is whether these hours were "required." They were.

Carolina Container is likely to argue that Plaintiff unnecessarily expanded the case beyond a simple breach-of-contract claim that the Court ultimately agreed with. Respectfully, no outcome is guaranteed. And because there was a substantial amount in controversy, Plaintiff's counsel's strategy to pursue all available legal theories and remedies was prudent.

Moreover, Plaintiff's counsel's strategy must be viewed in the context of Carolina Container's response to the incident. Carolina Container did not acknowledge its mishaps and try to find a sensible solution. Nor was it ever willing to engage in any meaningful settlement discussions.[9] Instead, both before the lawsuit was filed and throughout its duration, Carolina Container forcefully denied any liability—attempting to blame Ponder and Peeples for the loss. (*See, e.g.*, I.S. Duggan Aff. at ¶¶ 14-46.) Given this position, it was reasonable for Plaintiff and his counsel: (a) to fully explore and pursue all available legal and equitable theories of recovery, including the application of the imposter rule;[10] (b) to pursue the companies whose employees were the

---

[9] While Carolina Container never made a formal settlement offer, the highest potential settlement offer ever mentioned by its counsel was $200,000.

[10] The Court tacitly agreed with this approach in denying Carolina Container's Motion for Protective Order. (*See* Nov. 21, 2019 Order [Doc. 92] at

actors; (c) to depose all actors to determine what, if anything, was done to ensure that Plaintiff received the Holdback Amount; (d) to retain experts that counsel believed would assist the Court in understanding wire transfers and the proper protocols and safety measures that sophisticated attorneys and business people should follow; and (e) to pursue affirmative summary judgment and advocate strongly against Carolina Container's cross-motion for summary judgment. (*See id.*)

It is important to note that written, document, and deposition discovery were likely to be substantial and extensive, regardless of the claims pursued, given the amount in controversy. At least 11 individuals were directly involved with wire transfers associated with the Asset Purchase Agreement: Lehrer, Cobery, Ponder, Peeples, Hansen, Hammond, Conant, Holder, Dujmovich, JP Morgan Chase, and Calloway Title. Thus, these depositions were needed regardless of the theory pursued.[11] Carolina Container itself sought discovery well beyond the indemnification provision. For example, it deposed JBM Office Solutions, Defendant Ponder's IT services provider; it sought extensive discovery about Defendant Ponder's financial records—as if

---

20-26.)

[11] These witnesses are located, respectively, throughout the county: in Boston, MA; Dalton, GA; Charlotte, NC; Los Angeles, CA; Indianapolis, IN; and Atlanta, GA.

he had absconded with the Holdback Amount; and it identified two experts who were largely focused on Ponder's conduct. (*Id.* at ¶ 31.)

In sum, this was a complicated case that required thorough pre-suit investigation, significant motion practice, comprehensive discovery, and compelling summary-judgment briefing—a situation that Plaintiff's counsel did not create, but merely responded to. Thus, 1,174 hours were reasonably required to prosecute Plaintiff's claims through summary judgment.

### (b)    *The novelty of the issue presented.*

Business email compromise ("BEC") scams are, according to the FBI, "one of the most financially damaging online crimes." ("Scams and Safety," FBI Website (available at https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/business-email-compromise).) BEC scams have grown from $179 million in losses as of January 2015 to over $12 billion in total losses as of May 2018 (Am. Compl. [Doc. 46] at ¶ 58), and thus lawsuits arising from BEC scams are new and novel.

When presented with a lawsuit involving a BEC scam, courts, at times, use a straightforward breach of contract analysis, as this Court did. At other times, courts have used the "imposter rule." *See*, *e.g.*, *Arrow Truck Sales, Inc. v. Top Quality Truck & Equipment, Inc.*, No. 8:14-cv-2052-T-30TGW, 2015 WL 4936272, at *5-6 (M.D. Fla. Aug. 18, 2015); *Beau Townsend Ford Lincoln,*

*Inc. v. Don Hinds Ford, Inc.*, -- Fed. Appx. -- , No. 17-4177, 2018 WL 6181643, at *8-9 (6th Cir. 2018); *Bile v. RREMC, LLC*, No. 3:14cv051, 2016 WL 4487864, *8-13 (E.D. Va. 2016). The Court implicitly recognized the novelty of BEC scams and the potential application of the "imposter rule," even though the rule was not outcome determinative here. (*See* Sept. 16, 2021 Order at 20; *see also* Nov. 21, 2019 Order [Doc. 92] at 21-26.) Thus, it was prudent and reasonable for Plaintiff's counsel to pursue all available theories and remedies.

### (c)    The skill required.

The skills needed to handle and pursue such claims as those asserted here required seasoned trial lawyers having substantial experience in federal court and related procedures, who also have broad experience with both contract disputes and business transactions, along with fundamental knowledge of bank wire transfers, computer capabilities and maintenance, and the applicability of implied duties of good faith and fair dealing. The skill sets involved also required attorneys adept at legal writing and presenting cogent and persuasive arguments to the Court.

When the three considerations of Factor One are combined, they all support the reasonableness of the fees requested.

### (ii)   Factor Four:  the amount involved and the results obtained.

$1,710,000 is a substantial amount of money, which explains, in part, the conduct and strategies of the parties. It was a high-stakes case for everyone, and thus Plaintiff's counsel aggressively pursued his claims, while Carolina Container aggressively pursued its defenses. Plaintiff's counsel were also able to obtain a significant result for their client—i.e., a complete victory at summary judgment. (*See*, *e.g.*, Sept. 16, 2021 Order.) Factor Four, therefore, supports an award in excess of $300,000 for Plaintiff's attorneys' fees.

### (iii)   Factor Three and Factor Seven:  the fee customarily charged in the locality for similar legal services, and the experience, reputation, and ability of the lawyer or lawyers performing the services.

Plaintiffs' primary counsel for this case are both partners at Brinson, Askew & Berry (a reputable firm with a long track-record of success in federal court), with hourly rates of $300 and 275, respectfully. (*See* I.S. Duggan Aff. at ¶¶ 11-12, 90.) This hourly rate is customary for the Northern District of Georgia, Rome Division, if not slightly below market, for similar legal services. (*See id*.) Both attorneys have significant federal-court experience. (*See id*. at ¶¶ 90-91.)

In a 2016 attorneys-fee award, this Court collected a series of fee

19

decisions analyzing the reasonableness of a requested rate. *See Bishop v. Shorter University, Inc.*, Case 4:15-cv-33-HLM, Doc. 69 at 7-8 (N.D. Ga. Sept. 2, 2016) (attached as Ex. 2). It reviewed awards from 2012 forward and determined that $350 per hour to $450 per hour was a reasonable rate for partners with significant federal court experience located in the Northern District of Georgia, Rome Division. *See id.*

Moreover, the Court "is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth.*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citation omitted). Plaintiff submits that the Court is familiar with the prevailing rate in the Northern District of Georgia, Rome Division, and that Plaintiff's counsel's rates are at, or below, market for the area.

### (iv) Summary.

As outlined above, the requested attorneys' fees are reasonable based on, among other things, the hours worked, the novelty of the issues at hand, and the high-stakes nature of the case. On top of that, this case was not handled on a contingency-fee basis; Plaintiff incurred and paid the fees that he now seeks as Losses. As one Delaware court has found:

20

> [Plaintiff] agreed to pay fees at the hourly rates charged by
> Skadden, Arps regardless of the outcome, and he actually paid
> those fees. That [Plaintiff] agreed to do this with no contingency
> arrangement, and despite the considerable risk that the fees
> would be sizeable even though he might lose the case, evidences
> his belief that the fees he incurred were reasonable.

*See Arbitrium*, 1998 WL 155550 at *2.

### E.   Expert Costs.

Expert costs are necessarily included as part of the definition of Losses because the experts that Plaintiff's counsel retained were critical to Plaintiff's success at summary judgment—i.e., his recoupment of the Holdback Amount. "For a Court to second-guess, on a hindsight basis, an attorney's judgment concerning whether to retain an expert for a specific purpose, is hazardous and should whenever possible be avoided." *Arbitrium*, 1998 WL 15550, at *4.

Here, Plaintiff incurred $88,938.40 in expert costs, most of which is related to Plaintiff's retained experts:  Mark Lanterman, Kent Sinclair, and Prof. Patrick Longan. (*See* I.S. Duggan Aff. at Ex. D.) Lanterman provided expert testimony about wire transfers, including the critical nature and nearly-universal adoption of two-factor authentication—something that Carolina Container utterly failed to use. Sinclair provided similar expert testimony about wire transfers and the appropriate safeguards that should be in place, but specific to attorneys' practicing law in Massachusetts, which

is where Lehrer and Cobery are located. Prof. Longan provided expert testimony on attorneys' professional responsibilities to their respective clients under these specific facts.

Here, out of an abundance of caution, Plaintiff has excluded the fees and costs associated with Professor Longan and Mr. Hine since both were principally hired in connection with the claims against Defendant Ponder. Once those fees are excluded, Plaintiff asks for $57,188.40 in expert fees. These fees were incurred to force Carolina Container to meet its indemnification obligation under the APA.

**F.     Other Costs.**

Plaintiff also seeks other ancillary costs that he incurred in prosecuting this action against Carolina Container. Those are:

| | |
|---|---|
| Mailings | $303.56 |
| Legal Research | $6,278.72 |
| Travel | $5,995.05 |
| Court Reporter Fees | $30,155.30 |
| Photocopies | $84.74 |
| Filing and Service Fees | $1,149.90 |
| **TOTAL** | $43,927.28 |

(I.S. Duggan Aff. at ¶¶ 97-99.) These costs are properly subject to indemnification, since the word "costs" and the phrase "expenses of any kind" are used in the definition of Losses.

And even if there was no indemnification provision, Plaintiff would be entitled to the court-reporter fees and filing fees as the prevailing party under Rule 54(d). *See* FED. R. CIV. P. 54(d). 66.  Rule 54(d) "creates a presumption in favor of awarding costs to the prevailing party ...." *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 648 (S.D. Fla. 2007) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)). "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)." *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

### G.  Fees related to the Petition.

The final requested fees are those related to preparing this Petition. Such fees are generally recoverable. *See*, *e.g.*, *Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 560-61 (Del. 2002); *Bishop, et al. v. Shorter University*, Civil Action No. 4:15-cv-00033-HLM, Doc. 69 (Sept. 2, 2016) at 10 ("Generally, a party may recover for time spent preparing a fee petition."). Plaintiff's counsel engaged in good-faith discussions with Carolina Container's counsel in an attempt to avoid these fees. But it became quickly

apparent that there would be no agreement. In total, Plaintiff's counsel spent 52.8 hours on the Petition, which totals $15,031.85 in fees. (*See* I.S. Duggan Aff. ¶¶ 100-104.) Such fees are reasonable. *See, e.g., Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, Civil Action No. 2:12-CV-00082-RWS, 2014 WL 2195719, at *8 (N.D. Ga. May 27, 2014) (finding that 60.4 hours spent on substantial fee petition was reasonable).

## H. Hearing Request.

Plaintiff requests a hearing on this matter, and further notifies the Court of its intention to request Carolina Container's counsel's billing records, assuming that Carolina Container opposes this Petition. *See Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 668-69 (W.D.N.Y. 2011).

## CONCLUSION

Much of the Losses that Plaintiff seeks could have been avoided had Carolina Container adopted a reasonable response to the incident. But it did not. And now Carolina Container must answer for that decision. Plaintiff respectfully asks the Court to enter an award in the amount of $2,526,717.63 as his Losses under the APA. Plaintiff further asks for an award of fees related to this Petition in the amount of $15,031.85.

Respectfully submitted, this 1st day of November, 2021.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

*/s/ I. Stewart Duggan*

615 West First Street
P.O. Box 5007
Rome, Georgia 30162-5007
Phone: 706-291-8853
Fax: 706-234-3574
bberry@brinson-askew.com
isduggan@brinson-askew.com
lcarter@brinson-askew.com

ROBERT L. BERRY
Georgia Bar No. 055650
I. STEWART DUGGAN
Georgia Bar No. 232207
LEE B. CARTER
Georgia Bar No. 595903

*Counsel to Plaintiff Lloyd C. Peeples, III*

25

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned certifies that the foregoing filing complies with Local Rule 7.1(D) and that it has been prepared with Century Schoolbook, 13 point, a font and point selection approved by the Court in L.R. 5.1(C).

*/s/ Lee B. Carter*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served a copy of the foregoing

**PLAINTIFF'S PETITION FOR AN AWARD OF ALL LOSSES** with the

Clerk of Court using the CM/ECF system, which will automatically send

notification of such filing to all attorneys of record.

This 1st day of November, 2021.

*/s/ I. Stewart Duggan*