# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

Lloyd C. Peeples, III,

                Plaintiff,

                        Case No. 4:19-cv-21-MLB

v.

Carolina Container, LLC and
William Ponder,

                Defendants.

_____/

## <u>OPINION & ORDER</u>

This case arises from a botched wire transfer. Defendant Carolina Container, LLC was supposed to wire $1.71 million ("the Holdback Amount") to Plaintiff Lloyd C. Peeples under an asset purchase agreement. But it ended up wiring that money to a crook who hacked into the email account of Plaintiff's attorney (Defendant William Ponder) and used that account to send fraudulent payment instructions to Defendant Carolina. When the crook vanished with the money, Plaintiff sued Defendants to recover.

Plaintiff asserted claims against Defendant Carolina for breach of contract (Counts 1–2) and breach of the implied covenant of good faith and fair dealing (Count 3). (Dkt. 46.) He also asserted claims against Defendant Ponder for negligence (Count 4) and legal malpractice (Count 5). (*Id.*) He sought damages of $1.71 million (the Holdback Amount) plus interest and attorneys' fees. (*Id.* at 27; Dkt. 150 ¶ 10.)

All three parties moved for summary judgment. The Court granted Plaintiff's motion for summary judgment on Count 2 and essentially dismissed as moot Plaintiff's other claims. (Dkt. 186.) The Court found Defendant Carolina was liable for "$1.71 million, interest, and reasonable attorneys' fees," but ordered supplemental briefing on "the amount of interest and attorneys' fees to which Plaintiff is entitled." (*Id.* at 13, 27–28.) That briefing concluded last year, and the Court is now prepared to calculate Plaintiff's final award.

## I.   Defendant Carolina's Affirmative Defenses

Before getting into the numbers, the Court must resolve a threshold issue. Defendant Carolina claims the Court overlooked two affirmative defenses at summary judgment. (Dkt. 188 at 2–3, 5–6.) The first is that Plaintiff's "damages were caused by the negligence or fault of Plaintiff or

persons and entities other than Carolina Container" ("Apportionment Defense"). (Dkt. 47 at 23.) The second is that "Plaintiff failed to take any reasonable steps to mitigate, alter or otherwise reduce his alleged damages" ("Mitigation Defense"). (*Id.*) Defendant Carolina asserted both defenses in its answer to Plaintiff's complaint. (*Id.*) And Defendant now claims both defenses raise a jury question about whether it is liable for less than the full Holdback Amount. The Court disagrees.

## A.    Defendant Failed to Timely Move for Reconsideration

At summary judgment, Plaintiff claimed Defendant Carolina was liable for the full Holdback Amount under a breach-of-contract theory. (*See* Dkts. 150 ¶¶ 9–10; 150-1 at 18, 28, 40; 169 at 9.) The Court agreed and granted summary judgment to that effect. (Dkt. 186 at 10–14, 27.) The reason was simple. The asset purchase agreement required Defendant to pay Plaintiff the Holdback Amount. Defendant did not do that. So, under the agreement, Defendant must "pay and reimburse" Plaintiff for any losses "based upon, arising out of, with respect to or by reason of" Defendant's failure to send him the Holdback Amount. (Dkt. 150-6 § 8.03(b).) Obviously, those losses include the Holdback Amount

itself.  So, under the agreement, Defendant must "pay and reimburse" Plaintiff for that amount—all $1.71 million of it.

Defendant now asks the Court to reconsider this conclusion.  But it does so in a response brief rather than a motion for reconsideration. That is improper.  Moreover, even if the Court construed Defendant's request as a motion for reconsideration, it would be untimely.  The Local Rules require motions for reconsideration to be "filed with the clerk of court within twenty-eight (28) days after entry of the [challenged] order." LR 7.2(E), NDGa.  The Court entered its summary judgment order on September 16, 2021. (Dkt. 186.)  Defendant did not challenge the Court's order until November 15, 2021, almost two months later.  (Dkt. 188.) Defendant cannot circumvent the Local Rules by disguising its motion for reconsideration as something else.

## B.  Defendant Never Raised Its Affirmative Defenses

At summary judgment, Plaintiff explicitly asked the Court for "judgment as a matter of law as to his claims against Carolina Container and an award of compensatory damages in the amount of $1,710,000." (Dkt. 150 ¶ 10.)  "Defendant[] thus had an obligation to assert any arguments or defenses—including affirmative defenses—that (in [its]

4

view) would've precluded the entry of *that* judgment." *Shenzhen Kinwong Elec. Co. v. Kukreja*, --- F. Supp. 3d ---- 2021 WL 5834244, at *35 (S.D. Fla. Dec. 9, 2021). Defendant's Apportionment and Mitigation Defenses, if successful, would have precluded the Court from granting the judgment Plaintiff sought. So Defendant had an obligation to meaningfully assert them. It did not do so. Thus, the Court properly ignored—or impliedly rejected—both defenses.

### 1.   Law

"When Plaintiff move[s] for final summary judgment, it [becomes] Defendant's burden to raise any affirmative defenses that it believe[s] [are] applicable and preclude[] summary judgment." *FDIC v. Attorneys Title Ins. Fund, Inc.*, 2015 WL 11784950, at *1 (S.D. Fla. Mar. 11, 2015); *see Shenzhen Kinwong*, 2021 WL 5834244, at *34–36 (discussing this obligation). Defendant cannot "simply depend upon the mere allegations or defenses in [its] Answer." *Malibu Media, LLC v. Fitzpatrick*, 2013 WL 5674711, at *4 (S.D. Fla. Oct. 17, 2013). Nor can it fall back on "vague allegations." *United States v. Tubbs*, 2019 WL 7376706, at *2 (S.D. Fla. Nov. 22, 2019). Instead, it "must establish both the applicability of the defense(s) and triable issues of fact as to the existence of each essential

element of that defense." *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1260 (S.D. Fla. 2007).  Or, put another way, it "must demonstrate *why* a particular affirmative defense is applicable, and *how* it precludes the entry of summary judgment." *Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, 2012 WL 5635590, at *8 (S.D. Fla. Nov. 15, 2012). This requires citations to authority and the record.  *See Great Am. Ins. Co. v. Mueller*, 2022 WL 2377391, at *4 (11th Cir. June 30, 2022) ("[T]he burden is on the defendant to adduce evidence supporting an affirmative defense."); *Collazo v. Progressive Select Ins. Co.*, 2021 WL 5330647, at *2 (S.D. Fla. Nov. 16, 2021) ("[D]efendant must rely on record evidence in support of its affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment."); *Tubbs*, 2019 WL 7376706, at *2 ("Defendant has not met his burden as to [his] affirmative defenses" because "Defendant's response to the motion for summary judgment contains only one full page of merits argument, with no record citations and no exhibits attached"); *Int'l Sch. Servs.*, 2012 WL 5635590, at *9 ("Defendants fail to provide the Court with any facts or law to support this proposition.  Because the burden falls upon Defendants to

do so, Defendants' affirmative defense . . . is insufficient to prevent the entry of summary judgment.").[1]

More generally, "[f]or an issue to be adequately raised in [a] brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority." *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019). Where a party does not "support [its] arguments with sufficient detail"—including with "citations to authority or significant discussion"—courts "consider these arguments abandoned and do not consider them." *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d

---

[1] Where plaintiff moves for summary judgment on defendant's affirmative defenses—as opposed to defendant first raising the defenses in its opposition brief—some courts use the general burden-shifting framework applicable at summary judgment. *See, e.g.*, *Krone v. Dick's Sporting Goods, Inc.*, 2022 WL 486334, at *3–4 (M.D. Fla. Feb. 17, 2022); *Kleiman v. Wright*, 2020 WL 5632654, at *45 (S.D. Fla. Sept. 21, 2020); *Rios v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3230431, at *2 (S.D. Fla. Aug. 6, 2012). Under this framework, plaintiff bears the initial burden to "demonstrate [defendant] cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991). The burden then shifts to defendant to "respond with evidence sufficient to withstand a directed verdict motion at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993). But, even applying this framework, it would not make a difference here. Plaintiff met his initial burden at summary judgment, assuming he had one. (*See* Dkt. 150-1 at 35–38.) So the burden still shifted to Defendant Carolina to support its defenses.

1309, 1327 n.16 (11th Cir. 2021); *see Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). This principle applies to affirmative defenses, meaning "a district court can properly treat as abandoned an affirmative defense raised in a party's answer but not [adequately] included in its . . . summary judgment [briefing]." *Ecp Station I LLC v. Chandy*, 2016 WL 3883028, at *4 (M.D. Fla. June 29, 2016) (citing *United States v. Kafleur*, 168 F. App'x 322, 327 (11th Cir. 2006)); *see United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993) ("[T]he failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense."). To hold otherwise would either foist on a court the burden at summary judgment of anticipating a parties unargued positions and rendering judgment on hypothetical positions or permit a party unhappy with a court's resolution of its summary judgment arguments to prolong litigation while continually raising alternative arguments. If a party wants a defense addressed, the party ought to raise it with the court—a simple rule.

### 2.   Apportionment Defense

Defendant Carolina did not assert its Apportionment Defense at summary judgment.  (*See, e.g.*, Dkt. 156 at 23–25.)  At most, Defendant said the Court should allocate loss according to fault *if* "the imposter rule" applied.  (*Id.* at 19–21.)  But Defendant repeatedly insisted the imposter rule did *not* apply.  (*Id.* 13–17; Dkt. 149-1 at 14–17.)  And the Court explicitly "decline[d] to apply the rule."  (Dkt. 186 at 22.)  So the Apportionment Defense was simply not on the table.  Defendant "cannot readily complain about the entry of a summary judgment order that did not consider an argument [Defendant] chose not to develop for the district court at the time of the summary judgment motions."  *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).[2]

### 3.   Mitigation Defense

Defendant Carolina did mention its Mitigation Defense at summary judgment.  But it did so in only three sentences, none of which

---

[2] Even if Defendant had properly raised the Apportionment Defense at summary judgment, it is not clear it would have succeeded.  The Court granted summary judgment on a breach-of-contract claim.  And, at least as a general rule, "comparative fault principles are not intended to apply to an ordinary breach of contract claim."  *Richards v. Del Webb Communities, Inc.*, 2012 WL 12795683, at *3 (D. Ariz. Mar. 27, 2012).

included a citation to evidence or authority.  (Dkt. 156 at 24–25.)  That is insufficient.  *See Ajomale v. Quicken Loans, Inc.*, 860 F. App'x 670, 673 (11th Cir. 2021) (plaintiff abandoned claim where her summary judgment brief "devoted only three sentences to her argument . . . without any citation to authority").

Defendant's three-sentence argument also fails on the merits.  It first claims "Mr. Ponder, as agent for Mr. Peeples, was well aware prior to June 2018 that his email was compromised and failed to advise anyone."  (Dkt. 156 at 24.)  But "[i]t is well settled that the duty to mitigate begins upon the plaintiff's knowledge of the defendant's breach." *Healthquest of Cent. Jersey, LLC v. Antares Aul Syndicate 1274*, 2022 WL 225028, at *20 (D.N.J. Jan. 25, 2022).[3]  Defendant Carolina's breach did not occur until at least July 2018.  So what happened in June 2018—a

---

[3] *See Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 921 (N.D. Ill. 2009) ("[A] duty to mitigate damages does not arise until the plaintiff learns of the other party's breach of the underlying contract."); *Sergros Caracas de Liberty Mut., S.A. v. Goldman, Sachs & Co.*, 502 F. Supp. 2d 183, 190 (D. Mass. 2007) ("[T]he plaintiff has a duty to mitigate only when he learns of the breach."); *Ford Motor Credit Co. v. Hairston*, 2006 WL 2850615, at *4 (W.D. Va. Oct. 2, 2006) ("It would be an absurd misapplication of the rule for mitigation of damages to expect the Plaintiff to minimize the injury before the discovery of the breach.").

month earlier—tells us nothing about whether Plaintiff breached his duty to mitigate.

Defendant's three-sentence argument also claims "Mr. Peeples and Mr. Ponder were aware no later than July 9, 20[18] that somebody was using a 'spoofed' email to mislead them into believing Carolina Container would not send the wire transfer until the end of the month, but failed to call or otherwise advise Carolina Container of the potential for cybercriminal activity." (Dkt. 156 at 24–25.)  Defendant cites no evidence for this assertion.  And, in its Local Rule 56.1 filings, Defendant admitted the parties did not discover any fraudulent activity until July 18, 2018. (Dkt. 157 ¶¶ 91, 167.)  The Court credits that admission over the inconsistent (and unsupported) assertion in Defendant's brief.

But even assuming Defendant's assertion was accurate, Defendant has not shown Plaintiff could have stopped the fraud—and thus mitigated his damages—as of July 9, 2018.  Indeed, the evidence suggests the opposite.  Defendant Carolina wired the Holdback Amount to the hacker's account *six days earlier* on July 3, 2018; Defendant Carolina's bank could not cancel the wire after that date; the money arrived in the hacker's account on July 4, 2018; and, according to one bank employee,

the likelihood of recovering the money was already limited by July 6, 2018.  (*See* Dkts. 142 at 104–105, 109, 116–118; 157 ¶¶ 76–77.)  The employee testified that the "chances of recovery . . . get[] a little sketchy" after even a day, that "72 hours is a very long time," and that it would be "absurd" to say recovery was "probabl[e]" after three days.  (Dkt. 142 at 109, 117–118.)  Here, under Defendant's version of events, *six* days had passed before Plaintiff supposedly knew anything about the fraud.  Because it is unlikely Plaintiff could have mitigated his losses by then, he did not violate his duty to do so.

Notably, Defendant Carolina's latest brief does not actually repeat these mitigation arguments or say the Court should have resolved them in Defendant's favor.  Instead, it makes an entirely different argument— one never presented at summary judgment, even in conclusory form— and then blames the Court for not adjudicating it.  To understand the argument, some background is necessary.  Recall that Plaintiff's complaint asserted three claims against Defendant Carolina and two claims against Defendant Ponder.  On September 1, 2021, the Court asked Plaintiff to clarify "the status of his claims against Defendant Ponder if the Court grant[ed] Plaintiff's motion for summary judgment

against Defendant Carolina (including whether those claims would still require adjudication by the Court)." (Dkt. Entry, Sept. 1, 2021.) On September 3, 2021, Plaintiff responded that his claims against Defendant Ponder were "[i]n the alternative" to his claims against Defendant Carolina, that he "first" sought to recover from Defendant Carolina, and that "the Court would not be required to adjudicate [his] claims against Defendant Ponder if it grant[ed] Plaintiff's motion for summary judgment against Defendant Carolina." (Dkt. 184 at 1–2.) Thirteen days later, on September 16, 2021, the Court granted summary judgment to Plaintiff on his breach-of-contract claim against Defendant Carolina. Relying on Plaintiff's earlier representations, the Court essentially dismissed as moot Plaintiff's other claims. (Dkt. 186 at 27–28.)

Defendant Carolina now claims "Mr. Peeples's decision to abandon his negligence claim against Mr. Ponder violated his duty to mitigate." (Dkt. 188 at 7.) Again, that is not an argument Defendant Carolina raised before. And it comes too late. Defendant Carolina could have challenged Plaintiff's alleged abandonment in the two-week period before the Court granted summary judgment. It did not do so. Defendant Carolina notes the Court did not solicit its views. (*Id.* at 7 n.2.) But

13

Defendant Carolina was aware of Plaintiff's response to the Court and still sat silent. Nothing precluded Defendant from offering its views or at least seeking leave to do so. Nor did it preclude Defendant from filing a timely motion for reconsideration. That was the obvious thing to do if Defendant believed the Court erred. Defendant, however, did nothing. It is now too late to cry foul. The Court has already granted summary judgment and effectively dismissed Plaintiff's claims against Defendant Ponder. That happened months ago. All that remains is the question of how much interest and attorneys' fees should be awarded. Given the record here, Defendant has waived any duty-to-mitigate defense arising from Plaintiff's alleged abandonment of his claims against Defendant Ponder.

### 4.   Conclusion

The Court concluded at summary judgment that Defendant Carolina is liable for the full Holdback Amount. Defendant Carolina now challenges that conclusion based on two affirmative defenses. But Defendant should have asserted those defenses in its summary judgment

papers or, at worst, in a timely motion for reconsideration.  It did not do so.  So both defenses are waived or abandoned.[4]

## II.   Interest

Defendant Carolina also claims Plaintiff is not entitled to prejudgment interest.  (Dkt. 188 at 10–14.)  But, again, the ship has sailed on this issue.  Plaintiff moved for summary judgment against Defendant Carolina "in the amount of $1,710,000, plus *pre- and post-judgment interest*."  (Dkt. 150 ¶ 10.)  And his brief explicitly argued he was entitled to both kinds of interest.  (*See* Dkt. 150-1 at 18, 28–29, 40.)  Defendant's only response to this argument appeared in a footnote in its brief.  (Dkt. 156 at 12 n.3.)  That is not enough to contest the point.  *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."); *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2020 WL 13104165, at *4 n.2 (M.D. Fla. Aug. 10, 2020) ("The Court generally does not consider arguments raised in a

---

[4] Or, viewed another way, because Plaintiff moved for summary judgment on both defenses and met his initial burden to do so, he was entitled to summary judgment on those defenses.  Either way, the defenses are now off the table.

footnote.").  The Court granted summary judgment to Plaintiff and found the asset purchase agreement *does* require Defendant to pay Plaintiff prejudgment interest on the Holdback Amount.  (*See* Dkt. 186 at 13, 27–28.)  Defendant never filed a timely motion to reconsider that conclusion.  And, again, it is now too late to do so.

Even if Defendant's argument was timely, it would fail on the merits.    Under  the  asset  purchase  agreement,  Defendant  must compensate Plaintiff for "any and all Losses" related to Defendant's non-payment of the Holdback Amount.  (Dkt. 150-6 § 8.03(b).)  The agreement explicitly says "Losses" include "interest."  (*Id.* at 13.)  It does not limit the kind of "interest" that counts.  So any interest, including prejudgment interest, is recoverable.[5]

---

[5] The agreement also says Losses include "losses, damages, . . . costs or expenses of whatever kind."  (Dkt. 150-6 at 13.)  These concepts could be read  to  include  prejudgment  interest  as  well.    *See, e.g.*, *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, 693 F. App'x 838, 840–41 (11th Cir. 2017) (under Delaware law, "the purpose of awarding prejudgment interest is to ensure that the claimant is fully compensated for the *loss* of the time value of its money." (emphasis added)); *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 566 F. Supp. 1558, 1574 (D. Del. 1983) ("[P]rejudgment interest is an element of *damages*." (emphasis added)).

Section 8.06 does not require a different conclusion.  All it does is establish a 12% rate for post-judgment interest.  It says nothing about prejudgment interest, much less that it cannot be recovered.  (*See id.* § 8.06.)[6]  Section 8.09 does not help Defendant either.  It says the parties' "sole and exclusive remedy . . . shall be pursuant to the indemnification provisions set forth in [the agreement]."  (*Id.* § 8.09.)  But the agreement's "indemnification provisions" explicitly allow Plaintiff to recover "interest."  (*Id.* at 13, § 8.03(b).)  And, as the Court has already explained, the word "interest" includes prejudgment interest.  So Plaintiff's request for prejudgment interest is "pursuant to the indemnification provisions," as Section 8.09 requires.[7]

Defendant next claims Plaintiff is not entitled to prejudgment interest under Georgia law because his damages—the Holdback Amount—are "unliquidated."  (Dkt. 188 at 12–13.)  But Georgia law does not apply here.  The asset purchase agreement says "[t]his Agreement

---

[6] Section 8.06 provides that, if Defendant does not pay a Loss within five days after a "final, non-appealable adjudication" requiring it to do so, "any amount payable shall accrue interest" at 12% per year from the date of the adjudication.  (Dkt. 150-6 § 8.06.)

[7] At summary judgment, Defendant never argued Section 8.09 bars prejudgment interest, not even in the footnote in its brief.  So waiver applies even more strongly to this argument.

and *any related dispute* shall be governed by and construed in accordance with" Delaware law.  (Dkt. 150-6 § 10.10(a) (emphasis added).)  This language is expansive.  It means Delaware law controls virtually any controversy connected to the agreement in any way.  *See EMSI Acquisition, Inc. v. Contrarian Funds, LLC*, 2017 WL 1732369, at *11 n.65 (Del. Ch. May 3, 2017) ("The adjective 'any' has an expansive meaning and refers to 'every' or 'all' of the subject that it is describing."); *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1152 n.32 (Del. Ch. 2006) ("[W]ords like 'relate to' are to be read broadly."); Black's Law Dictionary (11th ed. 2019) (defining "related" as "[c]onnected *in some way*; having relationship to or with someone else" (emphasis added)).

Here, the parties dispute whether Plaintiff is entitled to prejudgment interest under the agreement for non-receipt of a payment due under the agreement.  This dispute is "related" to the agreement under any reasonable construction.  So it is "governed by" Delaware law. *See Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1306 (Del. Super. Ct. 1986) ("[I]f a contract contains a choice of law provision regarding prejudgment interest, that choice will be honored.").

18

"In Delaware, prejudgment interest is awarded as a matter of right." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992). "It is not necessary that the damages be liquidated." *Janas v. Biedrzycki*, 2000 WL 33114354, at *5 (Del. Super. Ct. Oct. 26, 2000); *see Molloy v. Daystar Sills, Inc.*, 2006 WL 1229677, at *8 (Del. Super. Ct. Mar. 29, 2006) ("[P]rejudgment interest is appropriate in cases in which the damages are calculable and not liquidated in nature."). So Defendant's argument about the liquidated/unliquidated distinction under Georgia law is irrelevant. The Court was right when it concluded previously that Plaintiff is entitled to prejudgment interest on the Holdback Amount.[8]

---

[8] Moreover, contrary to Defendant's assertion, the Court is not at all sure Plaintiff's damages *are* unliquidated under Georgia law. Damages are liquidated if they are "a certain and fixed amount, a sum which cannot be changed by proof." *Kitchen Int'l, Inc. v. Evans Cabinet Corp.*, 714 S.E.2d 139, 143 (Ga. Ct. App. 2011). Here, the asset purchase agreement explicitly defines Plaintiff's damages—the Holdback Amount—as "five percent (5%) of the Purchase Price Cash Amount." (Dkt. 150-6 § 2.05(b).) It then defines the Purchase Price Cash Amount as either (i) "$34,200,000.00" or (ii) $34,200,000.00 plus a "Post-Closing Adjustment" of $510,051.99. (Dkts. 150-6 §§ 2.05, 2.06; 150-34 at 2.) Which amount applies is a matter of contract construction. And that is a legal question, not a factual one that can be answered "by proof." *Kitchen Int'l*, 714 S.E.2d at 143; *see GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019) ("Questions of contract interpretation are pure questions of law."). In other words, the size of the Holdback Amount is not something that "could only be established by a

The only remaining question is how much interest Plaintiff should get.  Plaintiff's supplemental briefing from last year requests $410,437.26.  (Dkt. 191 at 20.)  But that number is now out of date and, in any event, was based incorrectly on Georgia law.  So let us try this again.  The Court **ORDERS** Plaintiff to file, no later than two weeks from the date of this order, argument and evidence about the amount of prejudgment interest to which he is entitled.  (*That* Plaintiff is entitled to prejudgment interest has already been resolved.)  Plaintiff's filing should be clear, detailed, thorough, and supported by citations to evidence and the record where appropriate.  It should also make it easy for the Court to calculate Plaintiff's award on the entry date of any subsequent order adjudicating the issue.  Defendant has one week to respond to Plaintiff's filing, and Plaintiff has one week to reply.  The

---

factfinder."  *Marchelletta v. Seay Const. Servs., Inc.*, 593 S.E.2d 64, 67 (Ga. Ct. App. 2004).  It is a question of law for the Court.  *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1341 (11th Cir. 2014) ("[U]nder Georgia law, the construction of a contract is a question of law for the court.").  Defendant cites no authority for the proposition that this kind of legal question renders unliquidated a sum that is otherwise "capable of calculation to a certainty."  *Baird v. Baird*, 420 S.E.2d 342, 344 (Ga. Ct. App. 1992).  Indeed, "[b]ecause these damages were defined by the contract, the amount is [presumptively] liquidated."  *Tracy Broad. Corp. v. Spectrum Scan, LLC*, 2009 WL 187653, at *12 (D. Neb. Jan. 23, 2009).

parties should consider whether they can simplify things by jointly stipulating to the amount due (subject to Defendant's right to appeal Plaintiff's entitlement to interest at all).

## III. Attorneys' Fees and Costs

Under Delaware law, a Court must consider eight factors in determining whether a fee request is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

*Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *11 (Del. Ch. Feb. 13, 2018). "The trial court need not address each . . . factor individually." *Miller v. Silverside*, 2016 WL 4502012, at *8 (Del. Super. Ct. Aug. 26, 2016). And it can ignore factors that do not apply. *See Boeing Co. v. Spirit Aerosystems, Inc.*, 2017 WL 6021423, at *4 (Del. Super. Ct. Dec. 5, 2017). "The party seeking the attorneys' fees bears the burden of establishing the reasonableness of the amount sought." *Id.* at *3. But, ultimately, the Court has "broad discretion in determining the amount of fees and expenses to award." *Lynch v. Gonzalez*, 2020 WL 5587716, at *1 (Del. Ch. Sept. 18, 2020). "[S]cientific precision is not required." *In re Compellent Techs., Inc. S'holder Litig.*, 2011 WL 6382523, at *21 (Del. Ch. Dec. 9, 2011).

Plaintiff seeks $338,410.54 in attorneys' fees and $101,115.68 in related costs and expenses. (Dkt. 191 at 20.) After considering the eight factors listed above, the Court believes these amounts are reasonable for the reasons stated in Plaintiff's briefing (among other reasons). (*See* Dkts. 187 at 10–24; 191 at 11–20.) Defendant raises several objections. But all of them fail.

### A.     Plaintiff's Level of Success

Defendant says Plaintiff cannot recover fees attributable to his claims against Defendant Ponder, his claims against former defendants New-Indy Containerboard and Kraft Group, and his invocation of the "the imposter rule" against Defendant Carolina.  (Dkt. 188 at 15–16, 21–22.)  Defendant insists Plaintiff did not prevail on any of these claims or theories, so fees are inappropriate.  (*Id.*)  The Court disagrees.

In Delaware, "the reasonableness of attorneys' fees and other expenses in a contractual fee shifting case should be assessed by reference to legal services purchased by those fees, not by reference to the degree of success achieved in the litigation."  *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 248 (Del. 2007); *see Weichert Co. of Pennsylvania v. Young*, 2008 WL 1914309, at *3 (Del. Ch. May 1, 2008) (noting "the Supreme Court rejected" the idea that "the reasonableness of attorneys' fees should be commensurate with the level of success achieved in the litigation").    But, even considering Plaintiff's success here, it was essentially total.  Plaintiff's complaint sought to recover the Holdback Amount, interest, costs, and attorneys' fees.  (*See* Dkt. 46.)  And that is exactly what he is getting.  Defendant's cited cases are inapposite

because they each involved plaintiffs who recovered substantially less relief than they sought.[9]   Because Plaintiff here "obtained excellent results, his attorney should recover a fully compensatory fee." *Dreisbach*, 2014 WL 5426868, at *6.

Moreover, Plaintiff has already "exclude[d] the fees and expenses specifically related to Plaintiff's claims against [Defendant] Ponder." (Dkt. 187 at 2.)  Plaintiff's counsel has submitted an affidavit attesting to this exclusion.  (Dkt. 187-1 at 17, 144–147.)  And "[n]o reason has been shown why counsels' representation is not creditworthy."   *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *2 (Del. Ch. Mar. 30, 1998) (rejecting defendants' argument that "plaintiffs are seeking surreptitiously to recover fees charged and incurred in [a different action]," because "Plaintiffs' counsel have represented to the Court that all fees beings sought here are for services rendered in this action").

---

[9] *See Dreisbach v. Walton*, 2014 WL 5426868, at *7 (Del. Super. Ct. Oct. 27, 2014) ("Plaintiffs recovered only $1,375 in damages, which is less than 7% of the total damages Plaintiffs originally alleged ($20,956.50)."); *2009 Caiola Fam. Tr. v. PWA, LLC*, 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015) ("Plaintiffs also sought between $918,000 and $1,590,000 in total damages, but ultimately were awarded less than $100,000.").

The Court did dismiss Plaintiff's claims against New Indy and Kraft (Defendant's parent companies) at the pleading stage. (Dkts. 36; 37.) But that does not mean fees for those claims are unrecoverable. Even in jurisdictions that assign special weight to a litigant's success, plaintiffs can still recover fees for unsuccessful claims that bear some relationship to plaintiffs' successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Claims are sufficiently related for this purpose if they "involve a common core of facts or [are] based on related legal theories." *Id.* at 435. "[C]ourts have expansively treated claims as being related." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987).

Plaintiff's claims against New Indy, Kraft, and Defendant Carolina were arguably related because they each "arose out of" the same event: the botched wire transfer. *Kidis v. Reid*, 976 F.3d 708, 721 (6th Cir. 2020). To be sure, Plaintiff asserted different theories against the parties: breach of contract against Defendant Carolina, and negligence against New Indy and Kraft. (*See* Dkt. 1.) But, as the Court noted previously, Plaintiff's negligence claims were "essentially repackaged" versions of his breach-of-contract claim. (Dkt. 37 at 28.) "All of the Complaint's allegations ultimately boil[ed] down to a single injury," each

claim "ar[ose] entirely from a breach of the Asset Purchase Agreement," and "any recovery [for the negligence claims] would be duplicative of Plaintiff's claim for breach of contract." (*Id.* at 28, 30–31.) Indeed, it was precisely because of this overlap that the Court dismissed New Indy and Kraft in the first place (though jurisdictional issues also played a role). (*Id.* at 28–31.) "Because plaintiff's claims against [New Indy and Kraft] were factually related to plaintiff's claim against [Defendant Carolina] and non-frivolous, the time spent litigating those claims is compensable." *Zinna v. Congrove*, 2019 WL 1236725, at *7 n.13 (D. Colo. Mar. 18, 2019); *accord Edwards v. Rogowski*, 2009 WL 742871, at *7 (N.D. Ill. Mar. 18, 2009).[10]

As for "the imposter rule," it was reasonable for Plaintiff to pursue that theory against Defendant Carolina even though the Court ultimately declined to apply it. "Litigants in good faith may raise alternative legal grounds for a desired outcome." *Hensley*, 461 U.S. at 435. When they do, "the court's rejection of or failure to reach certain

---

[10] *See City of Riverside v. Rivera*, 477 U.S. 561, 570 (1986) ("[I]t was inappropriate to adjust respondents' fee award downward to account for the fact that respondents had prevailed only on some of their claims, and against only some of the defendants.").

grounds is not a sufficient reason for reducing a fee." *Id.* Plaintiff need only show the "challenged litigation decision" was "thought prudent and appropriate in the good faith professional judgment of competent counsel." *Facchina Constr. Litigations*, 2021 WL 1118115, at *2 (Del. Super. Ct. Mar. 24, 2021).

Plaintiff has made that showing. Early in this case, the Court recognized "there is a viable argument that the imposter rule should control here." (Dkt. 92 at 24–25.) And, at summary judgment, the Court acknowledged several courts had applied the imposter rule on similar facts—and that the law in this area was unsettled. (Dkt. 186 at 20–27.) The Court also noted that, if the imposter rule did apply, Defendant Carolina would be liable for all (or virtually all) of the Holdback Amount. (*Id.* at 25–27.) Under these circumstances, not only was it wise for Plaintiff to seek relief under the imposter rule, but it also would have been decidedly *un*wise for him not to do so.

Plaintiff's level of success in this litigation is not the main guidepost for determining the reasonableness of his fee request. But whatever weight it has suggests Plaintiff should recover the fees he seeks. The Court has awarded Plaintiff the relief he requested in his complaint. And

Plaintiff reasonably pursued the related claims and theories on which he did not prevail.  So Defendant's argument about Plaintiff's lack of success does not warrant a fee reduction.

## B.   JP Morgan

Defendant next claims Plaintiff cannot recover fees for a discovery dispute involving JP Morgan because Plaintiff previously represented his fees for that dispute were less than he now seeks.  (Dkt. 188 at 17.)  But Plaintiff's counsel has submitted an affidavit explaining this discrepancy: his prior representation mistakenly omitted 21.6 hours of work from November 2019.  (Dkts. 191 at 15; 191-1 ¶¶ 15–17.)  Defendant does not dispute the substantive reasonableness of these hours.  Nor does it claim Plaintiff's counsel is being untruthful.  So the hours are compensable.

## C.   Time Entries

Defendant also says the Court should reduce Plaintiff's fees because some of the time entries in his itemized invoices are vague or include block billing.  (Dkt. 188 at 17–19.)  The Court disagrees.  "In Delaware, the submission of time records is not a strict requirement for the recovery of attorneys' fees."  *Dow Chem. Canada Inc. v. HRD Corp.*, 2013 WL 3942052, at *1 (D. Del. July 29, 2013).  And, even when time records are

submitted, "[t]he Court is not required to conduct a line-item review of the fees" because doing so "typically would neither be useful nor practicable." *Boeing*, 2017 WL 6021423, at *3; *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012). Granular time entries are thus unnecessary. And block billing is not "objectionable per se." *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2010 WL 571934, at *3 & n.22 (Del. Ch. Feb. 5, 2010).[11]

Here, Plaintiff has submitted itemized invoices in support of his fee request even though he was not required to do so. (*See* Dkt. 187-1 at 38–117.) He has also submitted a robust affidavit, a client ledger report, a timekeeper analysis report, and a spreadsheet that further breaks down

---

[11] *See Facchina Constr. Litigations*, 2021 WL 1118115, at *2 (Del. Super. Ct. Mar. 24, 2021) ("The Court is not required to conduct a line-item review of the fees."); *Lynch*, 2020 WL 5587716, at *5 ("[T]his Court does not permit an objecting party to litigate the particular details of individual expenses, as discussing specific invoices typically would neither be useful nor practicable."); *Bridev One, LLC v. Regency Centers, L.P.*, 2017 WL 3189230, at *6 (Del. Super. Ct. July 20, 2017) ("[C]ourts have repeatedly rejected a line-item review when determining reasonableness as neither useful, nor practicable."); *DG BF, LLC v. Ray*, 2022 WL 1618799, at *4 (Del. Ch. May 23, 2022) ("Determining reasonableness does not require that this Court examine individually each time entry and disbursement."); *White v. Curo Texas Holdings, LLC*, 2017 WL 1369332, at *5 (Del. Ch. Feb. 21, 2017) (same); *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010) (same).

Plaintiff's fees.  (*See id.* at 1–37, 118–154.)  These records—which total 154 pages—are substantially more voluminous and detailed than other records deemed sufficient by courts in Delaware.  *See Preferred Invs., Inc. v. T & H Bail Bonds*, 2014 WL 1292362, at *1–3 (Del. Ch. Mar. 25, 2014).[12]  Having reviewed Plaintiff's submissions, the Court finds they are "sufficiently supported to permit [Defendant] and the Court to assess the reasonableness of most aspects of the requested attorneys' fees and expenses."  *Id.* at *3.  No more is required.  "[T]he Court will not reduce the award of fees on the basis of block billing or vagueness of billing entries."  *Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, 2021 WL 4319224, at *6 (D. Del. Sept. 23, 2021) (reaching this conclusion because "the submission of time records is not a strict requirement for the recovery of attorneys' fees").

## D.  Excessive Hours

Finally, Defendant wants a fee reduction because Plaintiff's counsel supposedly spent too long on some tasks and occasionally used several attorneys when one attorney would have sufficed.  (Dkt. 188 at 19–21.)

---

[12] The Court has reviewed the underlying affidavit of attorneys' fees that was deemed sufficient in *Preferred Invs.*, 2014 WL 1292362.  Plaintiff's evidence is far more extensive and detailed.

The Court rejects this argument. Delaware courts are loathe to "second-guess, on a hindsight basis, an attorney's judgment" about how much staffing and time to allot a particular task. *Ray*, 2022 WL 1618799, at *4; *see Joseph v. Chacko*, 2016 WL 2931595, at *3 (Del. Com. Pl. May 18, 2016) (refusing to second-guess the wisdom of having "more than one attorney work on the same task or attend the same court proceeding").[13] That is all the more true when a litigant—particularly a sophisticated one—has already paid the attorney's fees without any guarantee that he will later recover those fees. "If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides sufficient incentive to monitor its counsel's work and ensure that counsel does not engage in excessive or unnecessary efforts." *Danenberg*, 58 A.3d at 997. Thus, "[a] sophisticated consumer's arms-length purchasing of the services

---

[13] *See Bellmoff v. Integra Servs. Techs., Inc.*, 2018 WL 3097215, at *3 (Del. Super. Ct. June 22, 2018) ("The Court will not examine each hour spent on the case through the lens of hindsight."); *Aveta*, 2010 WL 3221823, at *8 ("The staffing appears appropriate and need not be second-guessed.").

establishes [their] reasonableness, at least in the absence of any contrary evidence." *Dow Chem. Canada*, 2013 WL 3942052, at *2.[14]

Here, Plaintiff's counsel has "submitted an affidavit under penalty of perjury attesting that" the hours billed were reasonable and necessary. *In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *35 (Del. Ch. Apr. 30, 2021) (noting an affidavit to this effect requires deference); (*see* Dkt. 187-1). Plaintiff actually paid for these hours despite the risk of nonrecovery. (Dkts. 187 at 20; 187-1 at 119–120.)  And he did so with his eyes wide open given his extensive experience as an attorney himself.[15]  The Court is also mindful that this was a complex case involving novel facts, high stakes, expert witnesses, vast discovery, substantial motion practice, and

---

[14] *See Lynch*, 2020 WL 5587716, at *3 ("One indication of reasonableness is the reality that when the fee-seeking party litigated the matter and paid the expenses it now seeks to recover, it did not know that it would be able to shift those expenses to the other party."); *Boeing*, 2017 WL 6021423, at *5 ("Absent some demonstration to the contrary, the Court is not going to second guess a for-profit business that reviews its legal bills on a regular basis, makes determinations that the fees and costs are reasonable and then pays the bills.")

[15] Plaintiff has been an Assistant U.S. Attorney in the Northern District of Alabama for more than a decade.  (Dkt. 169-1 ¶¶ 9, 11.)  He was First Assistant in that office during the events underlying this lawsuit.  (*Id.* ¶¶ 11–13.)  He was also the chief executive officer and sole shareholder of the company he sold to Defendant under the asset purchase agreement.  (*Id.* ¶¶ 6–8.)

aggressive opposition from Defendant—and that the Court should be wary of second-guessing competent counsel's decisions years after the fact. All of this suggests Plaintiff's hours are reasonable. The handful of time entries about which Defendant complains are simply not enough to compel a contrary conclusion. So the Court declines to reduce Plaintiff's fee award based on "duplicative work and excessive hours." (Dkt. 188 at 19.)

## IV.  Conclusion

Plaintiff's Petition for an Award of All Losses (Dkt. 187) is **GRANTED IN PART** and **DENIED IN PART**. It is granted to the extent it seeks $1.71 million for the unpaid Holdback Amount, prejudgment interest, post-judgment interest, $338,410.54 in attorneys' fees, and $101,115.68 in related costs and expenses. It is denied to the extent it claims $410,437.26 is the amount of prejudgment interest to which Plaintiff is entitled.

The Court **ORDERS** the parties to meet and confer in a good faith effort to agree on the amount of prejudgment interest to which Plaintiff is entitled. If the parties reach an agreement (as the Court expects), they should notify the Court as soon as reasonably practicable. If they do not

reach an agreement, Plaintiff shall file argument and evidence about the amount no later than 14 days from the date of this Order.  Defendant Carolina may file a response no more than 7 days later, and Plaintiff may file a reply no more than 7 days after that.

**SO ORDERED** this 1st day of September, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE